IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLUMBUS LIFE INSURANCE COMPANY, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) C.A. No. 20-736 (MN) (JLH) <br> ) |
| WILMINGTON TRUST, N.A., as Securities Intermediary, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION

Donald L. Gouge, Jr., DONALD L. GOUGE, JR., LLC, Wilmington, DE; Michael J. Miller, Joseph M. Kelleher, Philip J. Farinella, COZEN O'CONNOR, Philadelphia, PA – Attorneys for Plaintiff

Kevin G. Abrams, John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, DE; Harry S. Davis, Robert E. Griffin, SCHULTE ROTH & ZABEL LLP, New York, NY; Aislinn K. Affinito, SCHULTE ROTH & ZABEL LLP, Washington, DC – Attorneys for Defendant

August 31, 2021
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections (D.I. 75) of Defendant Wilmington Trust, N.A. as Securities Intermediary ("Wilmington Trust") to Magistrate Judge Hall's May 6, 2021 Report and Recommendation (D.I. 70) ("the Report"). The Report recommended dismissal of Wilmington Trust's counterclaims for promissory estoppel and negligent misrepresentation and striking its affirmative defenses for laches, waiver and estoppel, and unclean hands. The Court has reviewed the Report (D.I. 70), Wilmington Trust's objections (D.I. 75), and Plaintiff Columbus Life Insurance Company's ("Columbus Life") response thereto (D.I. 78), and the Court has considered *de novo* the objected-to portions of the Report, the relevant portions of Columbus Life's motions to dismiss Wilmington Trust's counterclaims (D.I. 15) and to strike the affirmative defenses (D.I. 16) and the supporting brief and declaration (D.I. 17, 18), Wilmington Trust's response to the motions (*see* D.I. 27) and Columbus Life's reply and declaration (D.I. 31, 32). The Court has also afforded reasoned consideration to any unobjected to portions of the Report. *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).[1] For the reasons set forth below, Wilmington Trust's objections are OVERRULED, the Report is ADOPTED, Columbus Life's motion to strike is GRANTED, and Columbus Life's motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.

**I       BACKGROUND**

There is no dispute that the Report correctly set out the factual and procedural background of this case. The Court adopts it and incorporates it below (D.I. 70 at 5-7):

---

[1] No objections were filed to the Report's recommendation that the Court deny the motion to dismiss as to Count IV of Wilmington Trust's counterclaims, which seek return of all premiums paid on the life insurance policy at issue if it is declared void *ab initio*. The Court finding no clear error on the face of the record adopts the Report as to that issue.

At issue in this action is a $5 million insurance policy on the life of Janet Cohen.

On August 2, 2004, Ms. Cohen applied to Plaintiff Columbus Life Insurance Company ("Columbus Life") for a life insurance policy on her own life (the "Policy"). (D.I. 10 ("Ans."), Counterclaims ("CC") ¶¶ 3, 18.) She set up a trust to be the owner and beneficiary of the Policy. (*Id.* ¶¶ 3, 20.) The Policy was effective as of August 6, 2004. (*Id.* ¶ 18.)

The ownership and beneficial interest in the Policy was transferred several times. (*Id.* ¶¶ 22, 24, 26.) The latest transfer occurred in December 2016, when Defendant Wilmington Trust, N.A. ("Wilmington Trust") submitted a change of ownership and beneficiary request. (*Id.* ¶ 27.) Columbus Life approved the transfer and it became effective on February 14, 2017. (*Id.*)

When Wilmington Trust acquired the Policy, it was unaware that it was a STOLI policy. (*Id.* ¶¶ 28, 55.) At the time of the transfer, Columbus Life did not indicate that it believed the Policy was void *ab initio* or that Wilmington Trust would not be entitled to payment of the death benefit. (*Id.* ¶ 28.) At some point, Columbus Life became suspicious that the Policy was illegal, but rather than reveal its suspicions, it continued to bill for and collect premium payments from Wilmington Trust. (*Id.* ¶¶ 23, 29-33, 61.) Columbus Life also sent Wilmington Trust notices of premiums due and other notices, all of which suggested to Wilmington Trust that the Policy was valid and that Columbus Life would pay the death benefit when Ms. Cohen died. (*Id.* ¶¶ 28-29, 34-35.) In addition, Wilmington Trust "relied on the fact that Columbus's approvals of the ownership and beneficiary changes on the Policy meant that the Policy would not be challenged when Ms. Cohen died or at any other time." (*Id.* ¶ 28.)

Since the Policy's issuance in 2004, Columbus Life has collected more than $3.4 million in premiums from Wilmington Trust and its predecessors. (*Id.* ¶ 37.) However, on July 19, 2019, Columbus Life sent Wilmington Trust a letter indicating that it was investigating whether the Policy was an illegal STOLI policy. (*Id.* ¶ 35.)

Columbus Life filed this action on May 30, 2020. According to the Complaint, the Policy was obtained as part of a STOLI scheme and is therefore void. (D.I. 1, Ex. A ("Compl.") ¶¶ 27-30.) The Complaint contains two counts. The first seeks a declaration that the Policy is void *ab initio* because it is an illegal human life wagering

contract that violates the Delaware Constitution and state public policy. (*Id*. ¶¶ 34-38.) The second count seeks a declaration that the Policy is void *ab initio* for lack of an insurable interest under the Delaware insurable interest statute, 18 Del. C. § 2704. (*Id.* ¶¶ 39-44.)

Wilmington Trust's Answer denies that the Policy is void. (Ans. ¶¶ 27-30, 38.) It further alleges that "Columbus has known for years of all of the circumstances supporting its allegations" that the Policy is void, but "concealed [its] plan [to challenge the Policy's validity] . . . so it could continue to collect premiums believing it was doing so risk-free because it did not intend to pay the death benefit on the Policy." (*Id.*, CC ¶¶ 33, 36.)

Wilmington Trust's Answer sets forth five "affirmative defenses": "failure to state a claim" (First Defense); "laches" (Second Defense); "waiver and estoppel" (Third Defense); "unclean hands" (Fourth Defense); and "additional defenses" (Fifth Defense). The Answer also contains five counterclaims. Count I is a breach of contract claim alleging that Columbus Life violated the no contestability clause of the Policy by contesting its validity more than two years after its effective date. (CC ¶¶ 38-43.) Count II alleges "breach of the implied covenant of good faith and fair dealing and bad faith." (*Id.* ¶¶ 44-51.) Count III is pleaded in the alternative and alleges promissory estoppel. (*Id.* ¶¶ 52-58.) Count IV, also alleged in the alternative, seeks an automatic return of premiums or restitution for unjust enrichment. (*Id.* ¶¶ 59-64.) Count V alleges negligent misrepresentation. (*Id.* ¶¶ 65-71.)

On September 1, 2020, Columbus Life filed a motion to strike Wilmington Trust's Second, Third, and Fourth affirmative defenses (D.I. 16), and it filed a separate motion to dismiss Counts III, IV, and V of Wilmington Trust's counterclaims (D.I. 15). Those motions are presently pending before the Court.

## II.     LEGAL STANDARDS

### A.     Motion to Strike Pursuant to Rule 12(f)

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An affirmative defense is insufficient if it is not recognized as a defense to the cause of action." *U.S. ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 1755214, at *1 (E.D. Pa. Apr. 24, 2013) (quoting *Total*

3

*Containment, Inc. v. Environ Prods., Inc.*, No. 91–7911, 1992 WL 208981, at *1 (E.D. Pa. Aug. 19, 1992)). Motions to strike are generally "disfavored." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (citing *Seidel v. Lee*, 954 F. Supp. 810, 812 (D. Del. 1996)). The Third Circuit has cautioned that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law." *Symbol Techs.*, 609 F. Supp. 2d at 356 (quoting *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988)) (internal quotations omitted).

      **B.**      **Motion to Dismiss Pursuant to Rule 12(b)(6)**

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also*

*Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### III.  DISCUSSION

As the Report recognized, some background on STOLI policies, Delaware's statute requiring an insurable interest, and the Delaware Supreme Court's seminal decision in *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1071 (Del. 2011) ("*Price Dawe*") is necessary. The Report's recitation of these background issues (D.I. 70 at 1-4) is clear, fulsome and unobjected to. Thus, the Court will also adopt this section of the Report in full below:

> Since the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." [*Price Dawe*], 28 A.3d 1059, 1069 (Del. 2011). In response to the practice, the law developed a requirement that a person seeking to take out a life insurance policy on another have some reason to want the insured to remain alive. That concept is now known as the "insurable interest" requirement. The United States Supreme Court has articulated the public policy behind the requirement as follows:
>
>> [T]here must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the

5

event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

*Warnock v. Davis*, 104 U.S. 775, 779 (1881) … ; *see also Price Dawe*, 28 A.3d at 1069 (quoting *Warnock*); *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. Super. Ct. 1914), *aff'd*, 94 A. 515 (1915) ("To avoid [the situation] in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy.").

Like most states, Delaware has an insurable interest requirement. *Price Dawe*, 28 A.3d at 1069-70. Pursuant to 18 Del. C. § 2704(a), subject to certain exceptions, "[1] [a]ny individual of competent legal capacity may procure or effect an insurance contract upon his or her own life or body for the benefit of any person, [2] but no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable [i] to the individual insured or his or her personal representatives or [ii] to a person having, at the time when such contract was made, an insurable interest in the individual insured." 18 Del. C. § 2704(a); *Price Dawe*, 28 A.3d at 1073. The first clause says that a person may take out an insurance policy on his own life and make it payable to anyone, even a stranger. *Price Dawe*, 28 A.3d at 1073. The second clause says that, if a policy is taken out on the life of another, the benefits must be payable to either (i) the person insured or his/her personal representative or (ii) someone who, at the time the insurance contract was made, had an "insurable interest" in the insured. *Id.* The statute defines those with an "insurable interest" to include, among others, "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection," the trustee of a trust created and funded by the insured, and other individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c).

The Delaware insurable interest statute does not bar a person from taking out a policy on his own life in good faith and then transferring it to someone without an insurable interest. *Price Dawe*, 28 A.3d at 1068, 1074. Because life insurance policies have value, and it is legal to transfer them, a secondary market for them has emerged. Over time, however, increased market demand for high-dollar policies led to some undesirable effects, as the Delaware Supreme Court concisely explained in 2011:

> Over the last two decades [prior to 2011], . . . an active secondary market for life insurance, sometimes referred to as the life settlement industry, has emerged. This secondary market allows policy holders who no longer need life insurance to receive

6

> necessary cash during their lifetimes. The market provides a favorable alternative to allowing a policy to lapse, or receiving only the cash surrender value. The secondary market for life insurance is perfectly legal. Indeed, today it is highly regulated. In fact, most states have enacted statutes governing secondary market transactions, and all jurisdictions permit the transfer or sale of legitimately procured life insurance policies. Virtually all jurisdictions, nevertheless, still prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured. These policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life.
>
> In approximately 2004, securitization emerged in the life settlement industry. Under this investment method, policies are pooled into an entity whose shares are then securitized and sold to investors. Securitization substantially increased the demand for life settlements, but did not affect the supply side, which remained constrained by a limited number of seniors who had unwanted policies of sufficiently high value. As a result, STOLI promoters sought to solve the supply problem by generating new, high value policies.

*Price Dawe*, 28 A.3d at 1069-70. Since STOLI promotors could not legally take out life insurance policies for the benefit of investors who lacked an insurable interest, they concocted various schemes to conceal what they were up to. The details of the schemes vary, but the basic idea is that a "stranger" persuades a senior citizen to obtain a life insurance policy on his own life so that the policy can subsequently be transferred and sold in the market. To induce the senior to participate, the stranger may fund the policy premiums and may even pay compensation to the senior. *Price Dawe*, 28 A.3d at 1076.[2]

In its seminal decision in *Price Dawe* in 2011, the Delaware Supreme Court held that life insurance policies procured via STOLI schemes violate the Delaware insurable interest requirement. According to the Court, "if [a] third party uses the insured as an instrumentality to procure [a life insurance] policy, then the third party is actually causing the policy to be procured, which the second clause of section 2704(a) proscribes." *Id.* at 1074. The Court further held that STOLI policies were void ab initio because they violate Delaware's public policy against wagering and,

---

[2] As the Eleventh Circuit has noted, participation in a STOLI scheme has been likened to "investing with the grim reaper." *Est. of Malkin v. Wells Fargo Bank, NA*, 998 F.3d 1186, 1194 (11th Cir. 2021) (citing Douglas R. Richmond, Investing with the Grim Reaper: Insurable Interest and Assignment in Life Insurance, 47 Tort Trial & Ins. Prac. L.J. 657 (2012)).

thus, cannot be enforced, "no matter what the intentions of the parties." *Id.* at 1067-68.

At issue, here, is whether the counterclaims and affirmative defenses subject to Wilmington Trust's objections may be invoked against the issuer of a STOLI policy if that policy is void *ab initio*. The Report determined that they are not. Wilmington Trust objects to that determination on three grounds: (1) that the Report improperly recommends dismissal of the counterclaim for promissory estoppel; (2) that the Report erroneously concludes that Wilmington Trust's negligent misrepresentation claim is not actionable, creating an inconsistency with the recent Delaware Superior Court decision in *Kluener;* and (3) that the Report misinterprets and misapplies *Price Dawe* and the public policy driving it in recommending the Court strike Wilmington Trust's affirmative defenses. The Court addresses each of these objections in turn.

    **A.**    **Promissory Estoppel (Count III of Wilmington Trust's Counterclaims)**

Count III of Wilmington Trust's counterclaims asserts promissory estoppel. Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." *Esprit Health, LLC v. Univ. of Delaware*, No. 13-1385-RGA, 2015 WL 4720577, at *6 (D. Del. Aug. 7, 2015) (quoting *Weiss v. Northwest Broad., Inc.*, 140 F.Supp.2d 336, 344-45 (D. Del. 2001)). A promissory estoppel claim requires that "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. Sept. 10, 2020) (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013)).

"Promissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue." *Mosiman v. Madison Companies, LLC*, No. 17-1517-CFC, 2019 WL 203126, at *4 (D. Del. Jan. 15, 2019) (quoting *SIGA Tech., Inc. v. PharAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013)).  Thus, as the Report recognized: "If Columbus Life fails to prove that the Policy is unenforceable – that is, if a valid contract exists – then Wilmington Trust's promissory estoppel claim loses as a matter of law.  So the question is: can the doctrine of promissory estoppel be invoked against an insurer on a policy that has been held to be unenforceable because it violates public policy?"  (D.I. 70 at 13).  The Report answered "no" and recommended dismissal of Count III of the counterclaims.

Wilmington Trust argues that dismissing the promissory estoppel counterclaim is inconsistent with several decisions in this District declining to dismiss promissory estoppel claims. (D.I. 75 at 3 (citing *Sun Life Assurance Co. Can. v. U.S. Bank Nat'l Ass'n* ("*Sol II*"), 2019 WL 2151695, at *5 (D. Del. May 17, 2019); *Sun Life Assurance Co. of Can. v. U.S. Bank Nat'l Ass'n* ("*Sol III*"), 2019 WL 8353393, at *3 (D. Del. Dec. 30, 2019); *PHL Variable Ins. Co. v. ESF QIF Trust* ("*Griggs*"), 2013 WL 6869803, at *8 (D. Del. Dec. 30, 2013))).  It acknowledges, however, that there is a split of authority on this issue.  (*See* D.I. 75 at 5 (citing *Wilmington Sav. Fund Soc'y, FSB v. PHL Variable Ins. Co. ("WSFS")*, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014); *Sun Life Assurance Co. of Can. v. Wilmington Tr., Nat'l Ass'n* ("*De Bourbon*"), 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018); *Sun Life Assurance Co. of Can. v. Wilmington Tr., Nat'l Ass'n* ("*Frankel*"), 2019 Del. Super. LEXIS 2614, at *1-2 (Del. Super. Ct. Apr. 3, 2019))).

Having reviewed all of the cited cases, the Court will dismiss Count III of the counterclaims.  Through its promissory estoppel counterclaim, Wilmington Trust seeks to enforce the Policy should it be declared void.  (D.I. 10 ¶ 58 (seeking payment of "the $5 million face

9

amount on the Policy when it becomes due upon Ms. Cohen's death")).[3] Should the Policy be deemed void *ab initio,* however, that requested relief would fall squarely within the prohibition of *Price Dawe, i.e.,* that "[a] court may never enforce agreements void *ab initio*, no matter what the intentions of the parties." *Price Dawe*, 28 A.3d at 1067 (quotation marks omitted). Although Wilmington Trust argues (D.I. 75 at 4 (citing *Sol* II)) that it is not seeking to enforce the agreement, but rather to hold Columbus Life to its promises, that is a distinction without a difference given that effect of holding Columbus Life to its promises to enforce an unenforceable agreement.[4] Thus, Columbus Life's motion to dismiss is granted as it pertains to this claim.

### B. Negligent Misrepresentation (Count V of Wilmington Trust's Counterclaims)

To assert a claim for negligent misrepresentation, plaintiff must plead that "'(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff[s] suffered a pecuniary loss caused by justifiable reliance upon the false information.'" *Otto Candies, LLC v. KPMG LLP*, No. 2018-0435-MTZ, 2019 WL 994050, at *17 (Del. Ch. Feb. 28, 2019) (quoting *Steinman v. Levine*, No. 19-107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003)). Here, Count V of Wilmington Trust's counterclaims asserts negligent misrepresentation based on Columbus Life's

---

[3] In Count III, Wilmington Trust also seeks in the alternative that Columbus Life repay all premiums paid on the Policy since inception plus interest. (D.I. 10 ¶ 58). As to this relief, it appears to be the same relief sought in its claim for restitution in Count IV (*see* D.I. 10 ¶ 64 (seeking "the value paid for the Policy, the value of all premiums paid on the Policy since inception, plus applicable interest, attorney's fees, and other costs and damages")), which has not been dismissed and which appears to be a more appropriate counterclaim for this relief.

[4] Although in *Sol II* Chief Judge Stark did not dismiss the promissory estoppel claim, it is noteworthy that he did not allow the STOLI investor to use promissory estoppel to force the payment of the proceeds of a STOLI policy.

10

purported "implicit suggestions that it intended to pay out on the Policy," *e.g.*, "billing for premiums, approving beneficiary changes, and . . . sending reports." (D.I. 72 at 19, 20). The alleged damages are "the costs and expenses of litigating this case, the value paid for the Policy, the value of all premiums paid on the Policy since its inception, plus applicable interest and other costs and damages." (D.I. 10 ¶ 71). The negligent misrepresentation claim is based on the relationship with Columbus Life that was created by the Policy.

"[U]nder Delaware law, 'in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.'" *Audubon Eng'g Co., LLC v. Int'l Procurement & Contracting Grp., LLC*, No. 13-1248-LPS, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd*, 647 F. App'x 95 (3d Cir. 2016) (quoting *Kuroda v. SPJS Holdings*, L.L.C., 971 A.2d 872, 889 (Del. Ch. 2009)). Wilmington Trust, however, objects to this statement of the law, asserting that it "ignores the reasoning of the Delaware Superior Court in *Columbus Life Ins. Co. v. Wilmington Tr. Co.* ("*Kluener*"), 2021 WL 537117, at *6-7 (Del. Super. Ct. Feb. 15, 2021). The Court disagrees. In *Kluener*, Judge Wallace dismissed the defendants negligent misrepresentation claim for lack of jurisdiction and did not consider its legal viability. Thus, the Court does not read *Kluener* to be in conflict with dismissal of the negligent misrepresentation claim here. Moreover, that the fraud claim was allowed to proceed in *Kluener* does not change the analysis because Wilmington Trust has not asserted a fraud claim here. Indeed, as the Report recognized, should Wilmington Trust discover facts that would support a negligent misrepresentation claim – or a fraud claim – it may seek leave to amend its pleading.

In sum, because the duty to provide the information asserted as the basis for the negligent misrepresentation claim arose from the contract, there can be no remedy in tort. And if the contract

is void *ab initio* as against public policy, there can be no recovery on the contract. Therefore, Columbus Life's motion to dismiss is granted as it pertains to this claim.

### C. Affirmative Defenses (Laches, Waiver, Estoppel and Unclean Hands)

In its affirmative defenses, Wilmington Trust asserts laches, waiver and estoppel, and unclean hands. As with its promissory estoppel counterclaim, if the Policy is found to be valid, Columbus Life will pay the death benefit when it becomes due and those counterclaims and these affirmative defenses are moot. If, however, the Policy is found to be void *ab initio* for lack of insurable interest, Wilmington Trust's challenged affirmative defenses cannot mandate enforcement of an otherwise unenforceable contract. The Court disagrees that such a determination is inconsistent with the rationale and holding of *Price Dawe*.

In *Price Dawe*, an insurer sought a declaration that a life insurance policy was void. The owner of the policy contended that the insurer was prohibited from bringing a court challenge because the (statutorily-required) two-year contestability period set forth in the policy had expired. *Price Dawe*, 28 A.3d at 1063-68. The Delaware Supreme Court rejected that argument, holding that the insurer could challenge the enforceability of the policy because "[a] court may never enforce agreements void *ab initio*." *Id.* at 1067-68. Thus, the Court agrees with the Report that under the reasoning of *Price Dawe*, Wilmington Trust's challenged affirmative defenses, which seek to enforce the Policy should it be deemed void *ab initio*, are impermissible as they seek relief that the Delaware Supreme Court says courts cannot give.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Wilmington Trust's objections are OVERRULED and the Report is ADOPTED. Columbus Life's motion to strike is GRANTED and Columbus Life's

motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.  An appropriate order will be issued.