# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLUMBUS LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>WILMINGTON TRUST, N.A., as Securities Intermediary,<br><br>        Defendant. | No. 1:20-cv-00735-MN-JLH |
| COLUMBUS LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>WILMINGTON TRUST, N.A., as Securities Intermediary,<br><br>        Defendant. | No. 1:20-cv-00736-MN-JLH |

**COLUMBUS LIFE INSURANCE COMPANY'S RESPONSE TO WILMINGTON TRUST'S STATEMENT OF MATERIAL FACTS**

Pursuant to paragraph 9(b) the Rule 16 Scheduling Order (Dkt. 34, *Cohen*; Dkt. 35, *Romano*) and the parties' stipulation ordered by the Court on March 31, 2022, Plaintiff and Counterclaim-Defendant Columbus Life Insurance Company ("Columbus Life") hereby submits the following Response to the Statement of Material Facts Not in Dispute filed by Defendant and Counterclaim-Plaintiff Wilmington Trust Company, as Securities Intermediary, ("Wilmington Trust") in connection with its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

    1.    Admitted.

    2.    Denied as stated. Admitted that the Policies insuring the lives of Cohen and Romano were procured through the KDI/Concordia Program. Denied that Cohen or Romano

"obtained" the Policies or that the Policies were "their" property. *See generally*, WT._Op._Br. (conceded the Policies are void *ab initio*); Cl._Op._Br. Except as herein admitted, denied.

3. Denied as stated. Admitted that Bart Kavanaugh developed the KDI/Concordia Program and patented a version of it to use insurance trusts to purchase life insurance policies on the lives of wealthy insureds using non-recourse premium financing and annuities to pay premiums. **Ex. B** ¶¶ 4, 6, 11-12 **Ex. C** at 23-24; **Ex. D** at 38:2-18, 49:6-17, 69:6-19; **Ex. E** at 43:7-44:5, 46:3-5, 47:14-21, 49:9-50:6. Except as herein admitted, denied.

4. Denied as stated. Admitted that when an insured passed away, the insured's beneficiary *could* receive ▮▮▮▮ of the death benefit under the KDI/Concordia Program, depending on when the insured died. Denied that the insured's beneficiary would always receive some portion of the death benefit. **Ex. U** § (V)(A); **Ex. Z**; **Ex. DD** § (V)(A); **Ex. JJ**. Except as herein admitted, denied.

5. Denied as stated. Admitted that a lender might purchase an annuity on the life of the insured and would fund the premium payments. Further admitted that the lender would receive between ▮▮▮▮ of the policy's death benefit upon the death of the insured. **Ex. A** at 92:16-20, 106:14-22, 107:17-21; **Ex. C** at 109:8-110:4; **Ex. E** at 114:23-116:13, 172:13-174:7; **Ex. G** §§ 8(b), 9(a); **Ex. H** §§ 8(b), 9(a); **Ex. K** at 618; **Ex. L** at 18683; **Ex. Z**; **Ex. JJ**; *see generally* **Ex. U** § (V)(A); **Ex. DD** § (V)(A). Except as herein admitted, denied.

6. Denied as stated. Admitted that Columbus Circle was operated by Kavanaugh, financed premium payments under the Concordia Program, and was entitled to between ▮▮▮ ▮▮▮ of the policy's death benefit upon the death of the insured. Denied that the lender's entitlement was "compensation for acting as an interim lender" as the amount it was entitled to was substantially greater than any amounts owed under the non-recourse premium finance loan.

2

**Ex. C** at 109:8-110:4; **Ex. E** at 114:23-116:13, 172:13-174:7; **Ex. G** §§ 8(b), 9(a); **Ex. H** §§ 8(b), 9(a); **Ex. K** at 618; **Ex. L** at 18683; **Ex. Z**; **Ex. JJ**; *see generally* **Ex. U** § (V)(A); **Ex. DD** § (V)(A). Except as herein admitted, denied.

7.  Denied as stated. Admitted that Cohen and Romano sold the Policies after Kavanaugh failed to secure long-term financing from an institutional lender. Admitted that the plan was for the institutional lender to purchase annuities, which it would use as a financing facility to fund the non-recourse premium finance loans used to pay premiums. **Ex. A** at 83:10-85:8, 113:16-21, 115:3-13, 132:4-11, 160:17-161:14; **Ex. E** at 204:9-19; **Ex. F** at 97:2-11; **Ex. Q** at 890-91; **Ex. JJ.** Except as herein admitted, denied.

8.  Denied as stated. Admitted that both Columbus Circle and the long-term institutional lender were entitled to the vast majority of the death benefits and that South Bay Partners testified that the purpose of the death benefit sweep was to indirectly reimburse the institutional lender for the cost of the annuity despite the Trusts never borrowing any money to purchase the annuities. **Ex. A** at 71:19-72:21; **Ex. C** at 109:8-110:4; **Ex. E** at 114:23-116:13, 172:13-174:7; **Ex. G** §§ 8(b), 9(a); **Ex. H** §§ 8(b), 9(a); **Ex. K** at 618; **Ex. L** at 18683; **Ex. Z**; **Ex. JJ**; *see generally* **Ex. U** § (V)(A); **Ex. DD** § (V)(A). Except as herein admitted, denied.

9.  Admitted.

10. Denied as stated. Admitted that, in late 2003 or early 2004, Ed Leisher and his associates at Potomac Partners ("Potomac") did a WebEx presentation about the KDI/Concordia Program to Columbus Life representatives. **Ex. DDD** at 33:7-37:4, 124:24-125:15. Except as admitted, denied.

11. Denied as stated. Leisher and Holmwood were broker-general-agents who worked with insurance brokers to recruit seniors to participate in the KDI/Concordia Program. Admitted

3

that those insurance brokers would often recruit potential participants from their pre-existing clients. **Ex. B** ¶¶ 4-8; **Ex. C** at 40:20-41:9. Except as herein admitted, denied.

12. Denied as stated. The presentation was a WebEx presentation, not an in-person meeting. **Ex. DDD** at 33:7-37:4, 124:24-125:15. Except as herein admitted, denied.

13. Admitted.

14. Denied as stated. Admitted that Columbus Life learned about the KDI/Concordia Program at the Potomac presentation, which occurred before any applications were submitted to Columbus Life and before any policies that were part of the KDI/Concordia Program were underwritten. Denied that the presentation was at an in-person meeting; it was in a WebEx presentation. **Ex. DDD** at 33:7-37:4, 124:24-125:15. Except as herein admitted, denied.

15. Denied as stated. Denied that the presentation was at an in-person meeting; it was in a WebEx presentation. **Ex. DDD** at 33:7-37:4, 124:24-125:15. Except as herein denied, admitted.

16. Admitted.

17. Admitted only that one internal email was sent within Columbus Life requesting that the group of six policies, which included the Romano policy, be given "the highest priority." Columbus Life denies the implication that multiple emails were circulated or that the email reflects a request that the Romano policy alone be given the "highest priority." **Ex. 25** at 002208. Except as herein admitted, denied.

18. Admitted.

19. Admitted.

20. Denied as stated. Denied that the referenced documents are stated to be "contracts." Except as herein denied, admitted.

21. Admitted. As Columbus Life learned through litigation, however, the explanation of the KDI/Concordia Program provided to Columbus Life in 2004 was materially incomplete, incorrect, and misleading.

22. Admitted.

23. Admitted.

24. This paragraph refers to a written document, which speaks for itself. Therefore, no response is required.

25. This paragraph refers to a written document, which speaks for itself. Therefore, no response is required.

26. This paragraph refers to a written document, which speaks for itself. Therefore, no response is required.

27. This paragraph refers to a written document, which speaks for itself. Therefore, no response is required.

28. Denied as stated. Admitted only that a Scheduled Death Benefit chart was attached to the Participation Agreement and that it showed the portion of the death benefit that the insured's beneficiary could receive depending on when the insured passed away, but that the insured also acknowledged that the insured's beneficiary could ultimately receive nothing. **Ex. G** §§ 8(b), 9(a); **Ex. H** §§ 8(b), 9(a). Except as herein admitted, denied.

29. Admitted that Columbus Life was aware of the sample trust agreement provisions. **Ex. 13** at 4017. To the extent this paragraph refers to a written document, that written document speaks for itself. Therefore, no response is required. Except as herein admitted, denied.

30. Admitted.

31. Admitted.

5

32. Denied as stated. Admitted that Kavanaugh could not secure long-term financing from an institutional lender and that the testimony has been that the plan was for the institutional lender to purchase oversized annuities on the lives of the insureds, which it would use to fund the non-recourse premium finance loans used to pay the life insurance premiums and any excess annuity income would be retained by the institutional lender. **Ex. A** at 35:24-36:10; 70:2-22, 82:13-85:4, 99:21-25, 120:16-121:4, 147:12-16, 180:11-19. Except as herein admitted, denied.

33. Admitted.

34. Denied as stated. Admitted that the majority of the insureds were presented with two options once Kavanaugh failed to secure long-term financing: either pay the premiums out of pocket or sell their beneficial interest certificates in the life insurance trusts to Kavanaugh. Admitted that ▮▮▮▮ insureds sold their beneficial interest certificates to Kavanaugh's Columbus Circle. **Ex. A** at 82:13-85:19; 120:16-121:4. Except as herein admitted, denied.

35. Denied as stated. Denied that agreements signed on April 14, 2005, were titled "Authorization to Sell Life Insurance Policy to Pay Off Premium Finance Loan." The agreements were actually titled "Authorization to Sell Trust Certificate to Pay Off Premium Finance Loan." Admitted that Cohen and Romano both signed Authorization to Sell Trust Certificate to Pay Off Premium Finance Loan agreements, which sold the beneficial interest certificate in the Trusts to Columbus Circle in exchange for an amount equal to the Year-1 Scheduled Death Benefit for each Insured plus a refund of the initial ▮▮▮▮ participation fee. It is further admitted that Columbus Circle hoped to then sell the beneficial interest certificates in the Trusts for enough money to also profit on the premium finance loans. **Ex. A** at 132:4-11, 160:17-161:14; **Ex. P** at 10-11; **Ex. Q** at 890-91**.** Except as herein admitted, denied.

6

36. Admitted that the Insureds sold the beneficial interest certificates in the Trusts that owned the Policies. **Ex. P**; **Ex. Q**. Except as herein admitted, denied.

37. Admitted.

38. Denied as stated. Admitted Cohen and Romano both received an amount equal to their Year-1 Scheduled Death Benefit plus a refund of their initial ▮▮▮▮ participation fee from the sale of the beneficial interest certificates in the Trusts. **Ex. A** at 132:4-11, 160:17-161:14; **Ex. P** at 10-11; **Ex. Q** at 890-91; **Ex. Z**; **Ex. JJ**. Except as herein admitted, denied.

39. Denied as stated. Admitted that, in May 2005, Columbus Life informed producers that it was not accepting policies if the premiums were funded by non-recourse premium financing and policies that were taken out for sale on the secondary market. **Ex. 32**; **Ex. 34**. Except as herein admitted, denied.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Denied. The referenced Powerpoint slides do not state "how Potomac—Leisher and Holmwood's agency that marketed the KDI/Concordia Program—was connected to a significant percentage of Columbus Life's policies on elderly individuals." **Ex. 36.**

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted.

52. Admitted.

53. Admitted in part, and denied in part. Columbus Life admits that it sent letters in September 2005 in which it stated that it was "further investigating the purpose of insurance disclosed in the application, as well as the patterns and practices related to this and other insurance policies." Columbus Life denies the implication that the letters were addressed to Leisher and Holmwood. Instead, they were addressed to Erwin & Johnson. Columbus Life admits that the letter indicates that a copy was sent to Holmwood (but do not indicate that they were sent to Leisher). **Ex. 45** at 004383, 004384; **Ex. 46** at 004349. Columbus Life denies that the letters Wilmington Trust cites were sent in November or December 2005. The documents Wilmington Trust cites show a September 2005 date.

54. Admitted in part, and denied in part. Columbus Life admits that, in response to a correspondence from Columbus Life, Holmwood sent Columbus Life a letter dated September 15, 2005 stating that (1) the institutional lender they had previously used for other tranches of the KDI Plan (AI Credit) was no longer able to provide competitive financing; (2) Holmwood or others working with her had decided to implement a block of policies through interim financing, with the expectation that long-term financing would become available; and (3) once the refinancing efforts failed, it was decided to sell the policies to a third-party buyer. By way of further response, Columbus Life denies that the document cited by Wilmington Trust states that the longer-term financing that was being sought would necessarily be with a different lender; that "the people running the KDI/Concordia program" decided to implement interim financing; or that the insureds were the ones who decided to sell the policies. **Ex. 21** at 004290.

55. Denied. Columbus Life denies that the document Wilmington Trust cites makes any representation as to what the insureds intended. **Ex. 21** at 004291.

56. Admitted.

57. Denied as stated. Noschang testified Columbus Life did not do an insurable interest review because "the only avenue that we felt as we worked through this that we could do was material misrepresentation within the contestable period, and as such, we did not do that review." **Ex. 42** at 81:5–18. Except as herein admitted, denied.

58. Denied. Fangman testified that she had no knowledge of any insurable interest review having been conducted. **Ex. 3** at 220:9–223:15, 250:4–251:21. Except as herein admitted, denied.

59. Admitted.

60. Denied as stated. Admitted that several employees who appear on emails in the September 2005 time period are no longer employed by the company **Ex. 3** at 265:2–269:20. Except as herein admitted, denied.

61. Denied as stated. Admitted that, in January 2019, Columbus Life's parent company Western & Southern Financial Group ("W&S")—implemented a company-wide document retention policy that had been adopted in 2016 which, subject to certain exceptions, resulted in emails prior to January 2016 being purged from the company's system. **Ex. 3** at 259:19–260:16; **Ex. 43**; **Ex. 44** at 004455–004458. Except as herein admitted, denied.

62. Admitted.

63. Admitted.

64. Admitted.

65.     Denied as stated. These reports were designed to capture policies that Columbus Life believed were either "potential" STOLI policies or "potential" life settlement policies. **Ex. 42** at 208:1–17. Except as herein admitted, denied.

66.     Denied as stated. Admitted that these reports were issued on an annual basis from 2010 through 2014 and that Cohen and Romano Policies appeared on these lists. **Ex. 50** at 006537, 006544; **Ex. 51** at 008989, 008996; **Ex. 52** at 004092, 004099; **Ex. 53** at 004979, 004986; **Ex. 54** at 005378, 005384; **Ex. 42** at 246:13-247:3. Except as herein admitted, denied.

67.     Admitted.

68.     Denied as stated. Admitted that, in January 2012, at then-president J.J. Miller's request, Columbus Life prepared a report with a different methodology. Denied that it was "designed to capture STOLI policies." As Noschang testified, the methodology was not capturing policies "that are specifically STOLI," but rather just "tried to identify where . . . the largest concentration of where STOLI policies could exist are" and that those policies with that criteria "may or may not be STOLI." **Ex. 42** at 231:17-234:12, 235:10-17. Except as herein admitted, denied.

69.     Denied as stated. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. **Ex. 55** at 004501-004502.

70.     Admitted.

71.     Denied as stated. Noschang did not testify that the company's attempted tracking of potential STOLI and potential life settlements was "not worthwhile." Instead, he testified that the company stopped generating these lists around 2014 for several reasons: they "were intended

10

to be a tool for our marketing group"; "the reports were intended to try and identify producers and producer groups that had been involved" with potential STOLI and life settlements; "marketing could use those to determine if they were going to continue to . . . do business or continue to contract with those individuals"; "we felt that we were . . . stuck with the policies . . . and that we really couldn't do anything about them"; and "as time went on, the company put in place a variety of other . . . measures"—"we changed our application," "we added questions around life settlement, all those kinds of things." **Ex. 42** at 246:13–250:12.

72. Admitted.

73. Admitted.

74. Admitted.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Admitted.

80. Denied as stated. Admitted that, in October 2018, a Columbus Life assistant vice president named Justin Payne attended an International Claims Association conference which included a presentation on recent STOLI litigation developments (the "ICA Presentation") by Cozen O'Connor— Columbus Life's counsel in this case. The presentation was not a "marketing presentation." **Ex. 85** at 28:10–33:16; **Ex. 86**. Except as herein admitted, denied.

81. Denied as stated. The presentation was not a "marketing presentation." Admitted that the ICA presentation was on recent STOLI litigation developments including legal decisions from several jurisdictions that ruled that STOLI policies were illegal human life wagers, void ab

11

initio, not subject to the two-year contestability period; and that all or part of premiums could be retained. **Ex. 85** at 52:6–52:15; **Ex. 86**. Except as herein admitted, denied.

    82.    Admitted.

    83.    Admitted.

    84.    Admitted.

    85.    Admitted.

    86.    Denied as to whether the Portfolio was acquired as part of a UCC sale. To the extent this paragraph refers to a written document, that document speaks for itself. Therefore, no response is required. To the extent a response is required, denied.

    87.    Denied as stated. Admitted only that Wilmington Trust, Viva, Preston, and Blackstone, assert that Preston and Viva's counsel at Schulte, Roth & Zabel conducted due diligence on the Portfolio and that the contents of that alleged due diligence have been withheld from production. **Ex. VV** Nos. 4-5. Except as herein admitted, denied.

    88.    Admitted in part. Nelson further testified that the data room contained documents that referenced the existence of the Participation Agreements, Trust Agreements, and the Master Funding Agreements for the Policies, but that Viva did not try to obtain copies of those documents. **Ex. MM** at 123:14-127:17, 128:9-129:9, 130:21-133:3, 134:3-135:18. Denied as to "any information that would have suggested any issue or challenge to the Policies (had there been any)" as vague and ambiguous. **Ex. MM** at 123:14-127:17, 128:9-129:9, 130:21-133:3, 134:3-135:18. Except as herein admitted, denied.

    89.    Denied as stated. Admitted that Nelson testified that the data room did not contain copies of the Participation Agreements, Trust Agreements, or the Master Funding Agreements, but documents contained in the data room referenced the Participation Agreements, Trust Agreements,

and the Master Funding Agreements, which Viva could have tried to obtain but chose not to even try. **Ex. MM** at 123:14-127:17, 128:9-129:9, 130:21-133:3, 134:3-135:18. Except as herein admitted, denied.

90. Admitted.

91. Denied as stated. Admitted that Nelson testified that Preston and Viva knew the Policies were procured through premium financing and that such policies were "manufactured," not "natural," and potential STOLI but that Viva did not try to determine whether the financing was non-recourse (which by 2016 was known to be associated with STOLI) or whether the Insureds actually paid any premium. **Ex. MM** at 131:17-132:14, 135:6-18, 154:21-155:3, 170:13-171:15, 177:24-178:1, 181:18-182:23; **Ex. RR**. Except as herein admitted, denied.

92. Admitted.

93. Denied as stated. Maple Life's representation as to the Policies was based upon incomplete information, which Wilmington Trust has failed to include, and which was offered as an alternative to Maple Life's representation as to other policies in the portfolio that to its "[k]nowledge, [were] issued to a Person who, under the law of the jurisdiction in which such Person resided at the time the Policy was issued, is reasonably likely to be found to have met the prima facie requirements for insurable interest in the life of the Insured at the time the Policy was issued." **Ex. 112** at 66, 72, 138. Maple Life's alternative representation states that "Because the instrument creating the entity to which the Policy was originally issued is not present in the policy files relating to the Schedule 1 Policies, an evaluation of whether the prima facie terms of the applicable insurable interest laws were met at the time of policy issuance could not be made; however, the diligence review of the Policy Documents in such policy files, as well as any other information reviewed by MLA during its due diligence review did not disclose facts or

13

circumstances which, in the commercially reasonable judgment of MLA, would raise a material question as to whether the prima facie terms of the applicable insurable interest laws were met at the time of policy issuance." **Ex. 112** at 66, 72, 138. Except as herein admitted, denied.

94. Admitted.

Dated: May 31, 2022

        Respectfully submitted,

        */s/ Donald L. Gouge, Jr.*
        Donald L. Gouge, Jr. (#2234)
        DONALD L. GOUGE, JR., LLC
        800 N. King Street, Suite 303
        Wilmington, Delaware 19801
        (302) 658-1800, Ext. 1

        COZEN O'CONNOR
        Michael J. Miller (*pro hac vice*)
        Joseph M. Kelleher (*pro hac vice*)
        Charles J. Vinicombe (*pro hac vice*)
        Philip J. Farinella (*pro hac vice*)
        1650 Market St., Suite 2800
        Philadelphia, PA 19103
        *Attorneys for Plaintiff,*
        *Columbus Life Insurance Company*